664 A.2d 123

**COMMONWEALTH of Pennsylvania**

v.

**Leonard KELLEY, Appellant.**

Superior Court of Pennsylvania.

Argued April 24, 1995.

Filed Aug. 17, 1995.

---

378

George A. Gallenthin, Doylestown, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Commonwealth, appellee.

Before ROWLEY, President Judge and TAMILIA and SAYLOR, JJ.

SAYLOR, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Bucks County for terroristic threats. We affirm.

In August of 1992, Appellant, Leonard Kelley, was represented in a support matter by an attorney from a Doylestown law firm. At that time, he met attorney William H. Eastburn, III, who was the senior partner of the firm. Approximately eleven months later, in July of 1993, Mr. Eastburn was shot and seriously wounded by a disgruntled client. The matter received extensive news media attention, some of which Appellant viewed on television in August of 1993.

On August 19, 1993, Appellant appeared before the Honorable Michael J. Kane of the Court of Common Pleas of Bucks County concerning a domestic relations matter. At the conclusion of the hearing, the trial court entered an order against Appellant, who became angry and upset, yelling epithets at the judge and gesturing wildly. The judge had some difficulty in trying to calm Appellant, who was making speeches about feeling persecuted and having his constitutional rights violated. Appellant returned home after the hearing and saw the television coverage of the shooting of Mr. Eastburn, whose firm had previously represented him.

On the morning of August 20, 1993, Appellant telephoned Mr. Eastburn's office, requesting to speak to Mr. Eastburn. The call was answered by Mr. Eastburn's secretary, who asked Appellant which "Mr. Eastburn" he wished to speak to, informing Appellant that there were two attorneys with that last name at the firm. Appellant replied, "The one she missed. The one in charge," referring to the fact that a female client had attempted to kill Mr. Eastburn the previous month. The secretary told Appellant that Mr. Eastburn was not in, but asked if she could take a message. Appellant responded, "Yes," and then told the secretary that he was "going to kill Bill Eastburn and Judge Michael Kane, too, and I am just the guy to do it." The secretary asked Appellant if he knew what he was saying, and Appellant began yelling and screaming that the judicial system was not fair. Both Mr. Eastburn and Judge Kane were advised of the telephone call; both were obviously upset by the call and took Appellant's threat seriously, particularly in view of what had recently happened to Mr. Eastburn.

A few days later, Mr. Eastburn's secretary opened a letter from Appellant to Mr. Eastburn which was post-marked and dated August 20, 1993. In part, the letter stated:

Dear Mr. Eastburn,

I was sorry to hear about your unfortunate incident. Guns that run loose and are easily available are a problem. Let's get to the heart of the problem, judges and lawyers ... When I was in your office in the presence of Mr.

Williams, I said my story briefly of how I was jailed by Michael Kane ... Judge Kane wouldn't even listen to me on August 19, 1993, Thursday. No checks and balances. No accountability of the law. Immune judges....

A warrant for Appellant's arrest was issued by a district justice on August 20, 1993. Appellant was arrested that same day and was charged with two counts of terroristic threats. A preliminary hearing was held and the charges were bound over for trial. Appellant was tried before a jury on December 7, 1993. At trial, Appellant testified on his own behalf and admitted to yelling at Judge Kane on August 19, 1993, "Judge Kane, you stink!" He also admitted that he had telephoned Mr. Eastburn's office on August 20, 1993 and had told the secretary that he was sorry for what had happened to her boss, but that it was going to happen again if judges like Judge Kane were not removed from the bench. Appellant denied that he threatened to kill anyone. The jury found Appellant guilty of both counts of terroristic threats.

Appellant, after being advised of his post-trial rights, filed post-trial motions, challenging the weight and sufficiency of the evidence, asserting that the trial court had failed to properly charge the jury, and moving for an arrest of judgment or a new trial. The trial court denied the motions.

Following the completion of a pre-sentence investigative report, Appellant was sentenced to six to fifty-nine and one-half months imprisonment in the county jail for the first count of terroristic threats against Mr. Eastburn. With respect to the second count of terroristic threats against Judge Kane, Appellant was sentenced to a probationary term of five years, to run consecutive to his sentence for the first count. This appeal followed.

On appeal, Appellant sets forth the following issues:

1) Whether Appellant's arrest was illegal, when he was arrested without probable cause and there was no original arrest warrant?

2) Whether a change of venue would have been proper when there was a conflict of interest because a fellow trial

judge and fellow former Bucks County District Attorney were the victims in this case?

3) Whether the prosecution failed to establish a prima facie case of terroristic threats when the secretary who communicated the threat had not been terrorized by Appellant nor instructed by him to communicate the threat to the victims?

4) Whether the evidence was sufficient to sustain the verdict when there was no evidence of direct contact between Appellant and the victims?

5) Whether the trial court erred in denying Appellant's motion for a jury charge on the common law requirement that direct contact exist between the perpetrator and the victims?

6) Whether the evidence was sufficient to sustain the verdict when there was no proof that Appellant intended to terrorize either of the victims?

7) Whether the verdict was against the weight of the evidence when the Commonwealth only offered evidence of transitory anger?

8) Whether the sentence was excessive, based upon the sentencing court's alleged statement that Appellant's sentence was to send a message to future perpetrators who terrorize judges of the Bucks County Court of Common Pleas?

Appellant first claims that his arrest was illegal because he was arrested without probable cause and without an original warrant. This issue was not raised in Appellant's post-trial motions, however, and accordingly, has been waived. *See, Commonwealth v. Copeland,* 381 Pa.Super. 382, 385, 554 A.2d 54, 55 (1988) ("It is well settled that only issues raised in post-trial motions are preserved for appellate review."). However, even if Appellant's claim had been properly preserved, it is nonetheless meritless. The evidence on the record indicates that the district justice who issued the arrest warrant was presented with an affidavit of probable cause on August 20, 1993 by a police detective. A criminal complaint was signed and prepared by the district justice, and on August 20, 1993, a

warrant was issued and signed by the district justice, was attached to the criminal complaint, and was given to the police to serve. Thus, the arrest warrant was properly obtained and executed.

■ Secondly, Appellant contends that a change of venue was proper in this case because there was a conflict of interest due to the fact that one of the victims was a trial judge and the other victim had been a district attorney for Bucks County. This issue was never raised in Appellant's omnibus pre-trial motion, and accordingly, is waived.

■ In his third issue, Appellant asserts that the prosecution failed to establish a prima facie case at the preliminary hearing because the communicator of the threat, Mr. Eastburn's secretary, was not terrorized herself, nor was she instructed by Appellant to communicate the threat to the victims.

> At a preliminary hearing, the Commonwealth bears the burden of establishing a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it. To sustain that burden the Commonwealth must produce evidence that, if accepted as true, would warrant the trial judge to allow the case to go to the jury. The *prima facie* standard requires that the Commonwealth produce evidence of the existence of each and every element of the crime charged; consequently, absence of evidence as to the existence of a material element is fatal. This standard does not require that the Commonwealth prove the elements of the crime beyond a reasonable doubt nor that evidence is available that would prove each element at trial beyond a reasonable doubt.

*Commonwealth v. Austin*, 394 Pa.Super. 146, 150–151, 575 A.2d 141, 143 (1990) (citations omitted).

■ There is no merit to this argument. First, the Commonwealth was not required to produce evidence that the person to whom Appellant communicated the threat was actually frightened. *See*, 18 Pa.C.S.A. § 2706; *Commonwealth v. Campbell*, 425 Pa.Super. 514, 625 A.2d 1215 (1993). Moreover,

once a defendant has gone to trial and has been found guilty of a crime, any alleged defect in the preliminary hearing is rendered immaterial. *Commonwealth v. Jacobs,* 433 Pa.Super. 411, 640 A.2d 1326 (1994); *Commonwealth v. Worrall,* 415 Pa.Super. 478, 609 A.2d 851 (1992). "Where, as in the instant case, 'it is determined at trial that the evidence of the Commonwealth is sufficient to be submitted to the jury, then any deficiency in the presentation before the district justice would have been harmless.'" *Commonwealth v. Jacobs,* 433 Pa.Super. at 420, 640 A.2d at 1330, quoting *Commonwealth v. Hess,* 489 Pa. 580, 590, 414 A.2d 1043, 1048 (1980).

■ With respect to Appellant's fourth and sixth issues concerning the sufficiency of the evidence, we note that in reviewing sufficiency claims, this court must

> view the evidence in the light most favorable to the Commonwealth and, drawing all reasonable inferences therefrom favorable to the Commonwealth, determine if there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt.

*Commonwealth v. Edwards,* 521 Pa. 134, 143, 555 A.2d 818, 823 (1989), quoting *Commonwealth v. Stoyko,* 504 Pa. 455, 462, 475 A.2d 714, 718 (1984).

Section 2706 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. § 2706, provides:

> A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another ... or in reckless disregard of the risk of causing such terror....

Appellant claims that the evidence was insufficient to support his conviction for terroristic threats because there was no direct contact between himself and the victims, and because there was no evidence that he intended to terrorize either of the victims.

■ Contrary to Appellant's assertion, direct communication of threat between the perpetrator and the victim is not a requisite element of the crime of terroristic threats. Rath-

er, to obtain a conviction for making a terroristic threat, the Commonwealth must prove that: 1) the defendant made a threat to commit a crime of violence; and 2) such threat was communicated with the intent of terrorizing another or with reckless disregard for the risk of causing terror. *Commonwealth v. Campbell*, 425 Pa.Super. 514, 625 A.2d 1215 (1993).

In *Campbell*, the defendant approached a cashier in a convenience store and told her that the cashier who had been on duty when he was in the store on the previous day had gestured to him in a manner which he did not appreciate. He then indicated that he was planning to shoot himself and told the cashier to give a message to the cashier who had offended him that "when I decide to do this, it will be on her shift and there will be lots go down." Both cashiers were frightened by the defendant's remarks, and the defendant's conviction for making a terroristic threat was affirmed by the Superior Court.

Here, the evidence on the record established that Appellant made a threat to commit a crime of violence and that he communicated such threat to Mr. Eastburn's secretary, when she asked if she could give Mr. Eastburn a message. This threat was in turn communicated to the intended recipients, Mr. Eastburn and Judge Kane. Accordingly, Appellant's conduct met the requirement that the threat be communicated to the victims.

Section 2706 of the Crimes Code also requires that the threat be communicated with either the intent to terrorize or a reckless disregard of the risk of causing such terror. Therefore, Appellant's assertion that the evidence was insufficient to support his conviction because there was no proof that he intended to terrorize the victims is meritless, since the evidence on the record established that Appellant's conduct was deliberate and premeditated. Furthermore, the fact that Appellant threatened to kill both Mr. Eastburn and Judge Kane established that he did indeed manifest the intent to terrorize them. *See, Commonwealth v. Green*, 287 Pa.Super. 220, 429 A.2d 1180 (1981) (defendant's threats to "kill" the

victim established defendant's intent to terrorize the victim). Accordingly, Appellant's intent to terrorize can be inferred from his actions and from the message he communicated to Mr. Eastburn's secretary, and the evidence adduced at trial was sufficient to establish all of the elements of the crime of terroristic threats beyond a reasonable doubt.

In his fifth issue, Appellant contends that the trial court erred in refusing to charge the jury regarding the "common law requirement" that direct contact had to exist between Appellant and the victims for Appellant to be guilty of terroristic threats. As previously discussed in conjunction with Appellant's sufficiency claims, there is no requirement that there be a direct contact between the perpetrator and the victim to sustain a conviction for terroristic threats; rather, the only elements required by both statute and case law are that the defendant threaten to commit a crime of violence and that he communicate the threat with the intent to terrorize or with reckless disregard for the risk of causing terror. *See*, 18 Pa.C.S.A. § 2706; *Commonwealth v. Campbell*, 425 Pa.Super. 514, 625 A.2d 1215 (1993); *Commonwealth v. Cancilla*, 437 Pa.Super. 317, 649 A.2d 991 (1994). Accordingly, the trial court did not err in refusing to give a jury instruction that was not in accordance with the law. *See*, *Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990) (trial court's jury charge will be upheld if it adequately and accurately reflects the law and was sufficient to guide the jury properly in its deliberations).

In his seventh issue, Appellant claims that the verdict was against the weight of the evidence because the evidence only established transitory anger on his part, and not the intent to terrorize. Appellant's claim, although couched in terms of the weight of the evidence, is actually a challenge to the sufficiency of the evidence. As previously noted, the evidence on the record established that Appellant's actions were deliberate and that his threat was not a "spur of the moment threat which results from anger," which the Superior Court has held insufficient to support a conviction for terroristic threats. *See*, *Commonwealth v. Hardwick*, 299 Pa.Super. 362, 366, 445 A.2d

796, 798 (1982), citing *Commonwealth v. Sullivan*, 269 Pa.Super. 279, 409 A.2d 888 (1979). Furthermore, the trial court noted in its opinion that "A review of the testimony ... discloses premeditated, intentional conduct on [Appellant's] part rather than a contemporaneous expression of anger," and Appellant's testimony that he did not threaten to kill anyone and that his actions were motivated by a merely transitory anger was not found credible by the jury, which as the finder of fact, is free to believe all, part or none of the evidence presented at trial. *Commonwealth v. Edwards*, 521 Pa. 134, 555 A.2d 818 (1989); *see also, Commonwealth v. Lyons*, 382 Pa.Super. 438, 555 A.2d 920 (1989) (jury's function is to determine credibility of witnesses). Accordingly, we will not disturb the jury's finding that Appellant's conduct was not the product of a fleeting rage, but rather was the result of a conscious, deliberate intent to terrorize the victims.

Finally, Appellant asserts that his sentence was excessive because the trial court imposed it solely for the purpose of deterring "future perpetrators who terrorize judges." This issue has been waived as a consequence of Appellant's failure to file a motion for reconsideration of sentence.[1] However, even if Appellant's sentencing claim was properly before this court, it is meritless.

The trial court, in sentencing Appellant, considered the circumstances surrounding the crime, had ample opportunity to observe Appellant, and took into consideration factors such as: the weight and sufficiency of the evidence; the seriousness of the offense; Appellant's refusal to admit his crime or to undergo counselling; and deterrence in general. The trial court clearly stated these factors on the record at sentencing, and in its opinion succinctly stated the gravamen of the crime and the necessity for the sentence imposed, including long-term supervision of Appellant:

1. Because the determination of guilt in this case occurred prior to January 1, 1994, the provisions of former Rule 1410 apply. Therefore, in order to preserve sentencing issues for appellate review, Appellant was required to file a motion for reconsideration of sentence. *See, Commonwealth v. Scullin*, 414 Pa.Super. 442, 607 A.2d 750 (1992).

Terroristic threats is a first degree misdemeanor and carries up to five years in jail. In this case, there were two counts of terroristic threats involving two victims. One, the attorney, had recently been shot and seriously wounded by a disgruntled client. Defendant had been a client of his law firm. The second, the Judge, had presided over Defendant's domestic case just the day before, and had entered an order against Defendant. These threats were made by Defendant as a result of premeditation and were intentionally made to terrorize the victims.

One threat was made against an attorney, who was still recovering from a gun shot wound to the heart by a disgruntled client. He nearly died as a result. He testified that he took Defendant's threat seriously and was upset by it. The threat made against the Judge followed a hearing the day before on which an order was entered against Defendant. This victim also testified that he took the threat seriously. Defendant could have received a total penitentiary jail sentence of five to ten years. The undersigned believes the sentence of six months in the Bucks County Correctional Facility was not excessive based on the crimes committed. Also, this Court strongly believes Defendant should be under supervision for ten years.

Opinion, 12–12–94, p. 3.

Additionally, the sentencing transcript reveals that the trial court relied upon the pre-sentence report in imposing sentence. Where a sentencing judge has the benefit of a pre-sentence report, it will be presumed that he was aware of all relevant information regarding the defendant's character and that he weighed those considerations. *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988). The sentence which Appellant received was well within the statutory range for conviction of multiple counts of a first degree misdemeanor, and was amply supported by the evidence on the record. Accordingly, Appellant's sentencing claim is meritless.

Having found no merit to Appellant's claims, we affirm the judgment of sentence.