J-S18043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LATHAN NICHELSON | : | |
| | : | |
| Appellant | : | No. 909 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 21, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003771-2019

BEFORE: PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED AUGUST 6, 2021**

Appellant, Lathan Nichelson, appeals from the judgment of sentence of time served to 12 months' imprisonment followed by two years of probation, payment of costs, and forfeiture of a firearm, imposed after his bench trial conviction for terroristic threats.[1] For the reasons set forth below, we affirm.

On May 21, 2019, Appellant was charged with terroristic threats and retaliation against a witness based on statements, made in a telephone call with an attorney, that he would shoot a police officer who had arrested him for Driving Under the Influence (DUI) in 2015. Appellant waived his right to a jury trial and was tried at a one-day bench trial on February 21, 2020. Three

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

witnesses testified at this trial: Patrick Doherty, the criminal defense attorney to whom Appellant made the statements; Officer Wittmer, the police officer that Appellant said he would shoot; and the police detective who investigated Appellant's threats and interviewed Appellant.

Attorney Doherty testified to a telephone conversation that he had with Appellant late in the evening of May 20, 2019 when he called Appellant back after Appellant requested a consultation with a lawyer concerning his 2015 DUI through an on-line referral system.  N.T. at 8-23.  Appellant objected to this testimony on the grounds that these communications were protected from disclosure by the attorney-client privilege, but the trial court overruled the objection, permitted Attorney Doherty to testify, and admitted Appellant's on-line request form in evidence.  *Id.* at 14-15.  Attorney Doherty testified that in the conversation he advised Appellant that Appellant had exhausted his appellate rights with respect to the 2015 DUI and that Appellant then became hostile and expressed an intent to shoot the officer who arrested him for the 2015 DUI.  *Id.* at 17-18.  Attorney Doherty testified that he told Appellant that the conversation was not protected and that Appellant needed to stop saying that, but that Appellant continued to repeatedly say that he had post-traumatic stress disorder (PTSD) and was "out of options" and that he had guns in his house and would shoot the officer, whom he identified as Officer Wittmer.  *Id.* at 18-23.  Attorney Doherty testified that he was concerned because Appellant sounded lucid, serious, and determined, kept repeating the

threats, and said that he had PTSD and had guns in his house. *Id.* at 21-23. After the call with Appellant, Attorney Doherty telephoned the police department in question and advised them of Appellant's threats to Officer Wittmer and that they might want to warn Officer Wittmer. *Id.* at 23-25.

Officer Wittmer testified that the police department informed him on May 21, 2019 of Appellant's threats and that he was rattled by the threats and his wife was devasted. N.T. at 37-39. The police detective testified that a firearm was found in Appellant's house pursuant to a search warrant and that Appellant gave a statement after his arrest. *Id.* at 43-46. In his statement, Appellant admitted that he spoke to an attorney about his DUI and that he felt that the police officer in the DUI arrest had framed him, but said that he only told the attorney that if he killed a cop, he would deserve to go to jail and that he did not refer to a particular officer or intend to harm any police officer. *Id.* at 48-50; Commonwealth Ex. 2.

At the close of the Commonwealth's case, Appellant moved for judgment of acquittal on both charges. N.T. at 56-69. The trial court dismissed the charge of retaliation against a witness, but denied Appellant's motion with respect to the terroristic threats charge. *Id.* at 79. Appellant called no witnesses and following closing arguments, the trial court found Appellant guilty of the terroristic threats charge. *Id.* The Commonwealth and Appellant reached an agreement on Appellant's sentence, which the trial court accepted, and the trial court, in accordance with the agreement, sentenced Appellant to

- 3 -

"imprisonment for not less than time-served nor more than 12 months, with a two-year probation consecutive to the parole," payment of costs, and forfeiture of the firearm that he owned. *Id.* at 80-81. This timely appeal followed.

Appellant raises the following three issues for our review:

[1.] Whether the trial court erred by admitting evidence that was protected by the attorney-client privilege?

[2.] Whether sufficient evidence was presented at trial to convict Appellant of terroristic threats under 18 Pa.C.S. § 2706(a)(1) where the statement in question was a product of temporary anger, the subject of the alleged threat was not on the phone call when the statement was made, and Appellant never intended or expected that the statement would be relayed to the subject of the alleged threat?

[3.] Whether the trial court erred by imposing the costs of prosecution and offender supervision fee on Appellant without considering his ability to pay?

Appellant's Brief at 5 (suggested answers omitted). We address each of these issues in turn.

In his first issue, Appellant contends that his statements to Attorney Doherty were protected from disclosure by the attorney-client privilege and that the trial court erred in permitting Attorney Doherty to testify. The law is clear that defense counsel in a criminal case "shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5916; ***Commonwealth v. Schultz***, 133 A.3d 294, 312 (Pa. Super. 2016) (quoting

- 4 -

42 Pa.C.S. § 5916). Whether a defendant's conversation with an attorney is protected by the attorney-client privilege is a question of law over which our review is plenary and *de novo*. *In re Thirty–Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014); *Schultz*, 133 A.3d at 312.

For the attorney-client privilege to apply to a communication, the following four requirements must be satisfied: 1) the person claiming the privilege was a client or prospective client of an attorney; 2) the communication was with an attorney or his subordinate; 3) the communication was made without the presence of strangers for the purpose of securing legal services or legal assistance and not for the purpose of committing a crime or tort; and 4) the privilege has not been waived by the client or prospective client. *Commonwealth v. Boggs*, 695 A.2d 839, 843 (Pa. Super. 1997); *Commonwealth v. Mrozek*, 657 A.2d 997, 998 (Pa. Super. 1995). Appellant's initial communications with Attorney Doherty satisfied these requirements. Attorney Doherty testified that the conversation occurred when Appellant requested a consultation with an attorney concerning a DUI through an on-line referral system, that he is and was an attorney, that he identified himself as an attorney in responding to Appellant's request, and that he advised Appellant concerning the lack of legal grounds to set aside the DUI. N.T. at 8-18, 27-29. There was no evidence that anyone else was on

the line during this telephone call or that Appellant ever waived the privilege with respect to this consultation.

While Attorney Doherty testified that there was no attorney-client relationship when he spoke with Appellant, N.T. at 10-11, 17, that does not negate the privileged nature of the communications. The attorney-client privilege does not require an existing attorney-client relationship, but also applies where a defendant seeking legal assistance or services is not yet a client of the attorney. *Karoly v. Mancuso*, 65 A.3d 301, 314 (Pa. 2013); *Mrozek*, 657 A.2d at 999. Attorney Doherty's testimony concerning the consultation and advice with regard to the 2015 DUI and Appellant's on-line request form were therefore protected by the attorney-client privilege.

Attorney Doherty's testimony concerning Appellant's threats, however, was not protected by the attorney-client privilege. Appellant did not make any of the threats until after Attorney Doherty had finished giving Appellant his legal advice. N.T. at 18, 30. Most importantly, Appellant made the threats multiple times after Attorney Doherty advised him that the conversation was not protected from disclosure. *Id.* at 18-19, 21-23. Appellant therefore knew that the conversation with Attorney Doherty was not confidential when he made those repeated threats. The attorney-client privilege protects only confidential communications with an attorney, not all statements made to an attorney regardless of their purpose and confidentiality. 42 Pa.C.S. § 5916; *In re Estate of Wood*, 818 A.2d 568, 571-72 (Pa. Super. 2003);

***Commonwealth v. duPont***, 730 A.2d 970, 977 (Pa. Super. 1999). Because Appellant's repeated statements that he had PTSD and was out of options and that he had guns in his house and would shoot the officer were made after the legal consultation had ended and after he knew that what he said to Attorney Doherty was not confidential, those statements are not protected by the attorney-client privilege and the trial court did not err in allowing Attorney Doherty to testify to those communications.[2]

While the trial court did err in admitting in evidence Appellant's on-line request for a consultation and in permitting Attorney Doherty to testify concerning the consultation and advice with regard to the 2015 DUI, that error does not require reversal of Appellant's conviction. An error is harmless and does not constitute grounds for reversal if it could not have contributed to the verdict. ***Commonwealth v. Poplawski***, 130 A.3d 697, 716 (Pa. 2015); ***Commonwealth v. Radecki***, 180 A.3d 441, 461 (Pa. Super. 2018). Erroneous admission of evidence that is merely cumulative of other,

---

[2] We agree with the Commonwealth that Attorney Doherty's reporting of Appellant's threats was permitted under Rule 1.6 of the Rules of Professional Conduct, which provides that "(c) A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary: (1) to prevent reasonably certain death or substantial bodily harm." Pa.R.P.C. 1.6(c)(1). We do not, however, base our decision on this fact for two reasons. First, Rule 1.6 permits disclosure only to the extent necessary to prevent the harm, and reporting a threat is not as invasive of the attorney-client privilege as testimony against a client or prospective client in a criminal proceeding. In addition, the Rules of Professional Conduct do not govern judicial application of the attorney-client privilege. ***Commonwealth v. Chmiel***, 738 A.2d 406, 415 (Pa. 1999); ***Wood***, 818 A.2d at 573.

admissible evidence that is before the factfinder is harmless error. **Poplawski**, 130 A.3d at 716; **Radecki**, 180 A.3d at 461. Even if erroneously admitted evidence is not duplicative of other properly admitted evidence, the error is harmless where the evidence was non-prejudicial or any possible prejudice to the defendant was *de minimis*. **Poplawski**, 130 A.3d at 716; **Commonwealth v. Vucich**, 194 A.3d 1103, 1110-11 (Pa. Super. 2018).

Here, Attorney Doherty's testimony concerning his initial, privileged communications with Appellant and Appellant's on-line request form were both duplicative of properly admitted evidence and to the extent that they were not, they had no significant probative value with respect to the charge against Appellant or potential to prejudice the factfinder. In his statement to the police, Appellant admitted most of content of his communications with Attorney Doherty other than the threats -- he stated that he consulted with an attorney concerning the DUI, that he felt that the officer had "framed" him for the DUI, and that he told the attorney that he suffered from PTSD and "nothing to live for." Commonwealth Ex. 2. Appellant's statement to the police was properly admitted in evidence without any objection. N.T. at 48.

Any additional detail in the erroneously admitted evidence concerning the DUI consultation added nothing that could affect the trial judge's finding that Appellant made the threats at issue or that those threats satisfied the elements of the crime of terroristic threats. Rather, the critical evidence at issue was the threatening statements that Appellant made to Attorney

Doherty and those statements were unprivileged and properly admitted in evidence. Accordingly, the trial court's misapplication of the attorney-client privilege does not constitute grounds for reversal of Appellant's conviction.

In his second issue, Appellant contends that the evidence at trial was insufficient to prove the elements of terroristic threats because there was no evidence that he intended to terrorize Officer Wittmer. Whether the evidence at trial is sufficient to support the defendant's conviction is a question of law subject to this Court's plenary and *de novo* review. ***Commonwealth v. Tejada***, 107 A.3d 788, 792 (Pa. Super. 2015). The standard that we must apply in this review is whether, viewing all the evidence at trial in the light most favorable to the Commonwealth, there was sufficient evidence for the factfinder to find every element of the crime beyond a reasonable doubt. ***Commonwealth v. Crosby***, 226 A.3d 104, 107 (Pa. Super. 2020); ***Commonwealth v. Jackson***, 215 A.3d 972, 980 (Pa. Super. 2019).

> The Crimes Code defines the offense of terroristic threats as follows:
>
> A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> (1) commit any crime of violence with intent to terrorize another;
>
> (2) cause evacuation of a building, place of assembly or facility of public transportation; or
>
> (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706(a). To convict a defendant of terroristic threats, the Commonwealth must prove two elements, 1) that the defendant made a threat to commit a crime of violence and 2) that the defendant communicated the threat with the intent to terrorize another or with reckless disregard for the risk of causing terror. *Crosby*, 226 A.3d at 107; *Jackson*, 215 A.3d at 981; *Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016).

> The purpose of [the terroristic threats statute] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger.

18 Pa.C.S. § 2706 cmt.

Appellant argues that there was no proof of intent to terrorize because his statements were not made to Officer Wittmer or with the intent that they be communicated to Officer Wittmer and because they were spur-of-the-moment statements made in anger. We do not agree.

The offense of terroristic threats does not require that the defendant directly communicate the threat to the victim. *Jackson*, 215 A.3d at 981; *Beasley*, 138 A.3d at 47; *Commonwealth v. Kelley*, 664 A.2d 123, 127 (Pa. Super. 1995). Where the evidence shows that the defendant made threats to seriously harm another person, the factfinder may infer that the defendant knew that the threats would be reported to the victim and intended to terrorize the victim, especially where the defendant persists in making the threats after being told not make such statements. *Jackson*, 215 A.3d at 982 n.2

- 10 -

(factfinder could infer intent to terrorize co-workers who were not on the telephone call where the direct recipient of the threats repeatedly told defendant that the threats to harm co-workers "were both inappropriate and against workplace regulations"); *Beasley*, 138 A.3d at 47 (intent to terrorize shown where defendant posted the song in which he threatened to kill the victims on YouTube and a link to the song on his Facebook page despite advice that he should not, even though he did not send the song to the victims or directly communicate with the victims); *Kelley*, 664 A.2d at 127-28 (upholding terroristic threats conviction for threat against a judge where defendant made threat in a conversation with a lawyer's secretary, fact that defendant threatened to kill the lawyer and the judge "established that he did indeed manifest the intent to terrorize them").

Here, the evidence showed that Appellant told Attorney Doherty that he would shoot Officer Wittmer and that Appellant repeated that threat multiple times after Attorney Doherty told him that the conversation was not protected from disclosure and that "[y]ou cannot say that." N.T. at 18-19, 21-23. Given those facts, the trial court could reasonably infer that Appellant knew that his threats would be reported and reach Officer Wittmer and that Appellant intended to terrorize Officer Wittmer. *Jackson*, 215 A.3d at 982 n.2; *Beasley*, 138 A.3d at 47; *Kelley*, 664 A.2d at 127-28.

Appellant's claim that his threats were a mere spur-of-the-moment outburst likewise fails. The evidence showed that Appellant's threats were not

a response to a recent event; they related to events that occurred in 2015, over three years earlier. Nor were they uttered in the heat of an argument with the victim. Appellant was speaking to a third party, not the victim, and Attorney Doherty testified that Appellant sounded lucid, serious, and determined when he made the threats. N.T. at 21-22. The facts here thus bear no resemblance to **Commonwealth v. Sullivan**, 409 A.2d 888 (Pa. Super. 1979), on which Appellant relies, where the threats occurred in an angry telephone call about an incident that occurred earlier that day and in a heated argument with the victim.

In addition, Appellant repeated the threats after Attorney Doherty told him not to make such statements. N.T. at 18-19, 21-23. Where the defendant reiterates the threat after the person with whom he is speaking tells him not to make such a statement, the factfinder may reasonably conclude that the threat is not a mere spur-of-the-moment product of anger. **Crosby**, 226 A.3d at 108 (threat was not spur-of-the-moment and evidence was sufficient to support terroristic threats conviction where defendant "chose to make the threat again" after the person with whom she was speaking told her not to make such statements).

In his third and final issue, Appellant argues that Pa.R.Crim.P. 706(C) requires the trial court to consider the defendant's ability to pay before imposing costs on the defendant and that 18 P.S. § 11.1102(c) requires the

- 12 -

trial court to consider the defendant's ability to pay before imposing parole and probation supervision fees. These arguments are without merit.

During the pendency of this appeal, this Court addressed both of these issues and rejected the precise arguments that Appellant asserts here. In **Commonwealth v. Lopez**, 248 A.3d 589 (Pa. Super. 2021) (*en banc*), this Court held that Rule 706(C) only requires the trial court to hold a hearing on the defendant's ability to pay where the defendant faces incarceration for non-payment and that the trial court is not required to make a presentence determination of the defendant's ability to pay before imposing costs. 248 A.3d at 590, 592-96. In **Commonwealth v. White**, 251 A.3d 1274 (Pa. Super. 2021), this Court held that 18 P.S. § 11.1102(c) does not require the trial court to determine the defendant's ability to pay before imposing supervision fees. 251 A.3d at 1276-77. Because no presentence determination of Appellant's ability to pay was required, there is no error in the trial court's imposition of costs and supervision fees on Appellant.

For the foregoing reasons, we conclude that the trial court did not err in admitting Attorney Doherty's testimony concerning Appellant's threats to shoot Officer Wittmer and that its error in admitting other, privileged portions of Appellant's communications with Attorney Doherty was harmless. In addition, the evidence at trial was sufficient to support Appellant's terroristic threats conviction and the trial court's imposition of costs and supervision fees

on Appellant was not error. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/2021